UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVIAN OMILIA CATHEY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 19-CV-275-GPC(WVG)<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 18, 20.]** |

This is an action for judicial review of a decision by the Commissioner of Social Security denying Plaintiff Vivian Cathey supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act") and Social Security Disability Insurance under Title II of the Act. The parties have filed cross-motions for summary judgment, and the matter is before the undersigned Magistrate Judge for preparation of a Report and Recommendation. For the reasons stated below, the Court RECOMMENDS that Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment be GRANTED.

### I.　Overview of Social Security Claim Proceedings

Pursuant to the Social Security Act, the Social Security Administration ("SSA") administers the SSI program. 42 U.S.C. § 901. The Act authorizes the SSA to create a

system by which it determines who is entitled to benefits and by which unsuccessful claimants may obtain review of adverse determinations. *Id.* §§ 423 *et seq.* Defendant, as Acting Commissioner of the SSA, is responsible for the Act's administration. *Id.* § 902(a)(4), (b)(4).

## A. The SSA's Sequential Five-Step Process

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. To qualify for disability benefits under the Act, a claimant must show that (1) he or she suffers from a medically-determinable impairment[1] that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more and (2) the impairment renders the claimant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A); 1382(c)(3)(A).

A claimant must meet both of these requirements to qualify as "disabled" under the Act, *id.* § 423(d)(1)(A), (2)(A), and bears the burden of proving that he or she "either was permanently disabled or subject to a condition which became so severe as to create a disability prior to the date upon which [his or] her disability insured status expired." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). An administrative law judge ("ALJ") presides over the five-step process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (summarizing the five-step process). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process, the review process is terminated at that step. *Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir. 1994).

---

[1] A medically-determinable physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Step one in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments. The so-called "severity regulation" dictates the course of this analysis. *Id.* §§ 404.1520(c), 416.920(c); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

An ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1520(c). The ability to do "basic work activities" means "the abilities and aptitudes necessary to do most jobs." *Id.* §§ 404.1521(b), 416.921(b).

However, if the impairment is severe, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairment is equivalent to one of several listed impairments that the SSA acknowledges are so severe as to preclude substantial gainful activity. *Id.* §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled so long as the impairment meets or equals one of the listed impairments. *Id.* § 404.1520(d).

If the ALJ does not deem a claimant disabled—but before formally proceeding to step four—the ALJ must establish the claimant's Residual Functional Capacity ("RFC"). *Id.* §§ 404.1520(e), 404.1545(a). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. *Id.* §§ 404.945(a)(1), 404.1545(a)(1). The RFC analysis considers "whether [the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). In establishing a claimant's RFC, the ALJ must assess relevant medical and other evidence, as well as consider all of the claimant's impairments, including impairments categorized as non-severe. *Id.* § 404.1545(a)(3), (e).

If an ALJ does not conclusively determine a claimant's impairment or combination of impairments is disabling at step three, the evaluation advances to step four.

At step four, the ALJ uses the claimant's RFC to determine whether the claimant has the ability to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). So long as a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. *Id.* § 404.1560(b)(3). Conversely, if the claimant either cannot perform or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's evaluation, the ALJ must verify whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. *Id.* § 404.1520(g). If the claimant is able to do other work, the claimant is not disabled. However, if the claimant is not able to do other work and meets the duration requirement, the claimant is disabled. *Id.* Although the claimant generally continues to have the burden of proving disability at step five, a limited burden of going forward with the evidence shifts to the SSA. At this stage, the SSA must present evidence demonstrating that other work that the claimant can perform—allowing for his RFC, age, education, and work experience—exists in significant numbers in the national economy. *Id.* §§ 404.1520, 1560(c), 416.920, 404.1512(f).

**B.    SSA Hearings and Appeals Process**

In accordance with Defendant's delegation, the Office of Disability Adjudication and Review administers a nationwide hearings and appeals program. SSA regulations provide for a four-step process for administrative review of a claimant's application for disability payments. *See id.* §§ 416.1400, 404.900. Once the SSA makes an initial determination, three more levels of appeal exist: (1) reconsideration, (2) hearing by an ALJ, and (3) review by the Appeals Council. *See id.* §§ 416.1400, 404.900. If the claimant is not satisfied with the decision at any step of the process, the claimant has sixty days to seek administrative review. *See id.* §§ 404.933, 416.1433. If the claimant does not request review, the decision becomes the SSA's—and hence Defendant's—binding and final decree. *See id.* §§ 404.905, 416.1405.

A network of SSA field offices and state disability determination services initially process applications for disability benefits. The processing begins when a claimant completes both an application and an adult disability report and submits those documents to one of the SSA's field offices. If the SSA denies the claim, the claimant is entitled to a hearing before an ALJ in the SSA's Office of Disability Adjudication and Review. *Id.* §§ 404.929, 416.1429. A hearing before an ALJ is informal and non-adversarial. *Id.* § 404.900(b).

If the claimant receives an unfavorable decision by an ALJ, the claimant may request review by the Appeals Council. *Id.* §§ 404.967, 416.1467. The Appeals Council will grant, deny, dismiss, or remand a claimant's request. *Id.* §§ 416.1479, 404.979. If a claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court. *See id.* §§ 404.981, 416.1481. If a district court remands the claim, the claim is sent to the Appeals Council, which may either make a decision or refer the matter to another ALJ. *Id.* § 404.983.

## II. BACKGROUND

### A. Procedural History

On September 21, 2012, Plaintiff protectively filed an application for DIB pursuant to Title II of the Social Security Act, alleging that she became disabled and unable to work on July 1, 2008. (AR 241-242.) The agency denied Plaintiff's application initially and upon reconsideration. (AR 108-11, 114-18.) Plaintiff filed a written request for a hearing on May 6, 2013 before an ALJ. (AR 83.) Plaintiff, her attorney, and a vocational expert appeared at a hearing on February 3, 2014, and Plaintiff and the vocational expert testified. (AR 83.) On February 14, 2014, the ALJ issued an unfavorable decision finding Plaintiff was not disabled under the Act. (AR 83-93.) Plaintiff then asked the Appeals Council to review the decision of the ALJ. (AR 100.) That decision was vacated and remanded by the Appeals Council for a new administrative hearing. (AR 100-02.) On August 29, 2017, Plaintiff again appeared with an attorney at a hearing before a different ALJ. (AR 29-53.) On

February 26, 2018, the second ALJ issued an unfavorable decision finding Plaintiff was not disabled through her date last insured. (AR 15-22.) On December 6, 2018, the Appeals Council denied Plaintiff's request for review, making the second ALJ's decision the final decision of the Commissioner. (AR 1-6.) Plaintiff then filed this action pursuant to 42 U.S.C. § 405(g).

B.   **Plaintiff's Testimony**

Plaintiff testified at her administrative hearing that she previously worked in electronics assembly doing quality assurance. (Supp. AR 7.) She testified that because of her wrist and shoulder she was no longer able to work. (*Id.*) Plaintiff further testified that she had a ganglion cyst on her left wrist and her shoulder was swollen. (*Id.*) She also testified that at her previous job all of her work-related tasks were done by using her left wrist. (Supp. AR 10.) Plaintiff testified that she could no longer do anything with her left hand. (*Id.*) Plaintiff testified that on a scale of one to ten her pain was at a nine or ten. (*Id.*) She also stated under oath that she could not lift anything greater than a small stack of papers or pens. (*Id.*) Plaintiff asserts that her left shoulder was injured from her frequent use of her arm while at work. (AR 35.) Plaintiff had the ganglion cyst on her left arm removed sometime before August 2017, but she did not recall exactly when. (AR 36.) Plaintiff testified that she uses her right hand to eat because she cannot hold a spoon with her left hand. (AR 37.) She also testified that she is able to drive a car if the destination is not too far and for emergencies. (AR 39.) Plaintiff testified that she does not do any cooking and cleaning, but that she does spend most of her time at home. (*Id.*) Plaintiff testified that she sometimes goes to a therapist where they massage her wrist. (AR 36.)

C.   **The ALJ's Findings**

At step one, the claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2008 through her date last insured of December 31, 2012. (AR 18.) At step two, through the date of the last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(AR 18.) At step three, through the date of the last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 18.) Prior to step four, the ALJ found that the claimant had the RFC to perform medium work as defined in 20 CFR 404.1567(c), the claimant can lift/carry 50 pounds occasionally and 25 pounds frequently, sit for six hours in an eight-hour workday, and stand/walk for six hours in an eight-hour workday with occasional overhead work with the left upper extremity. (AR 18.) At step four, the ALJ found that the claimant was capable of performing past relevant work as an inspector of electronics and that the vocational expert testified that these RFC limitations do not preclude the performance of past relevant work as an inspector of electronics. (AR 18-20.) At step five, the ALJ found that the claimant was not under a disability, as defined in the SSA, at any time from July 1, 2008, the alleged onset date, through December 31, 2012, the date last insured. (AR 20.)

### III. STANDARD OF REVIEW

A district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a scintilla, but less than a preponderance. *Id.* Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.* The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### IV. DISCUSSION

There are two questions in this case that must be decided. First, whether the rule of mandate and law of case doctrine barred the second ALJ from changing the previously established RFC. Second, whether the ALJ erred by assigning controlling weight to non-treating physicians' opinions over a treating physician's opinion. If, as Plaintiff contends,

the ALJ was barred from changing the previously established RFC or did not have adequate reasons for giving controlling weight to the non-treating physicians over the treating physician, then Plaintiff may be entitled to benefits or at least have the case remanded to the SSA. Having reviewed the parties' arguments and the administrative record, this Court finds Defendant's argument most accurate and persuasive.

**A.     The Rule of Mandate and Law of the Case Doctrine Are Not Applicable**

Defendant correctly contends that neither the law of case doctrine and the rule of mandate are applicable to this matter, as there was no federal court remand that invoked these doctrines.

The law of case doctrine and the rule of mandate are federal court rules and apply in the context of social security cases *when there is a federal court remand*. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Hall v. City of Los Angeles*, 697 F.3d 1059,1067 (9th Cir. 2012). The rule of mandate provides that "any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." (*Id*. at 1067.) As further explained below, neither applies in this case because there has never been a federal court remand in the entirety of these proceedings.

Here, there is no dispute that the "remand" Plaintiff challenges was confined wholly within proceedings of an administrative agency and did not involve the federal courts. After holding a hearing, the first ALJ issued a decision finding that Plaintiff was not disabled under the Act. (AR 860-86.) Plaintiff sought review with the Appeals Council, which accepted review. (AR 98-102.) The Appeals Council vacated the first ALJ's decision and remanded the matter to a second ALJ. Plaintiff primarily argues that the second ALJ was not permitted to change the first ALJ's RFC findings because it violated the Appeals Council mandate. However, her reliance on a single federal court case discussing the law of case doctrine and the rule of mandate is misplaced because that case did not apply these doctrines in the context of proceedings confined wholly within administrative agencies that

do not involve remands to agencies *from* federal courts. *See Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016) ("We . . . hold in this case of first impression that the law of the case doctrine and the rule of mandate apply to social security administrative *remands from federal court* in the same way they would apply to any other case.") (emphasis added).

Indeed, cases discussing these doctrines in relation to administrative agencies simply stand for the principle that when a federal district or appellate court remands a case to the SSA, the SSA is bound by these doctrines just as a district court would be bound upon remand from a federal appellate court. *See also Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1280 (9th Cir. 2018) ("Under the rule of mandate, an administrative agency may not deviate from a supervising *court's* remand order, and the reviewing court may review the agency's decision on remand to assure that its prior mandate is effectuated.") (emphasis added; cleaned up); *Jose V. v. Comm'r of Soc. Sec.*, No. 18-CV-3196-RHW, 2020 U.S. Dist. LEXIS 251505, at *9-10 (E.D. Wash. June 12, 2020) ("In accordance with the rule of mandate and the law of the case doctrine, the United States Supreme Court has recognized that an administrative agency is bound on remand to apply the legal principles laid down *by the reviewing court*.") (emphasis added). Plaintiff cites no authority that applies these doctrines in the social security context when the remand order issues from the administrative agency itself rather than from a federal court. Accordingly, these doctrines simply are not applicable to this case and did not bind the second ALJ's decision-making process.

In any event, it appears the second ALJ acted in accordance with the Appeals Council order when he changed Plaintiff's RFC on remand. The ALJ was consistent in keeping Plaintiff's RFC to perform medium work and only changed certain limitations. Such changes to the Plaintiff's limitations were authorized by the Appeals Council order and would not have violated the mandate or been inconsistent with it. In reviewing the Appeals Council order, it is apparent that it directed the ALJ to gather new evidence, to hold a new hearing, and to re-consider the medical opinion evidence. (AR 101-102.) Accordingly, an ALJ would be free to change the RFC findings after consideration of new

evidence. The ALJ followed the Social Security regulations when he provided support for his RFC findings by considering the treating and non-treating source opinions (20 C.F.R. § 404.1527, SSR 96-2p and 96-5p), considering the non-examining source opinions (20 C.F.R. § 404.1527(e), SSR 96-6p), and performing the subjective symptom evaluation (20 C.F.R. § 404.1529(c)). Thus, even if the rule of mandate applied, the ALJ's decision was not inconsistent with the Appeals Council's order.

**B.      The ALJ's Assignment of Weight to Plaintiff's Treating Physician**

Plaintiff argues that Dr. Balourdas's medical opinion should have been given controlling weight because he is the treating physician. However, the ALJ did not err by assigning controlling weight to the consultative examiner and State agency doctor over Plaintiff's treating physician.

When evaluating a disability claim, an ALJ weighs each medical opinion in a claimant's case record based on factors including, among other things, how well the opinion is supported by relevant evidence and how consistent the opinion is with the record as a whole. 20 C.F.R. § 404.1527(c). Opinions from treating physicians generally receive greater weight than non-examining sources, 20 C.F.R. § 404.1527(c)(2), but not if the opinions are conclusory, unsupported, or inconsistent with the evidence of record. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may not give controlling weight to a treating doctor's medical opinion unless it is well supported and not inconsistent with the record. *See* 20 C.F.R. § 404.1527(c)(2).

Here, Dr. Balourdas's opinion is inconsistent with evidence in the record. With regard to the Plaintiff's physical impairments, the record contains contradictory opinions from two State agency doctors and a consultative examiner that directly contradict Dr. Balourdas's opinion. (AR 63-64, 75-77, 767-72.) The consultative examiner Thomas Sabourin M.D. and the State agency doctors R. Masters, M.D. and V. Michelotti, M.D. made the determination that Plaintiff would be limited to medium level work activity. (AR 21-22.) In addition to the consistency of these opinions, Dr. Sabourin's opinion was further supported by "a comprehensive physical examination of [Plaintiff]" over the course of two

days "and contain[ed] detailed clinical findings and narratives explaining and supporting Dr. Sabourin's medical opinions and medical source statements." (AR 22.) Dr. Sabourin's exams demonstrated that Plaintiff had full range of motion and minimal swelling (AR 20 citing AR 561), and that there was no tenderness, warmth, crepitus, instability or swelling bilaterally in the shoulders. (AR 20 citing AR 769.)

In addition to the inconsistency between the medical opinions, the ALJ noted the unremarkable treatment history that contradicted Dr. Balourdas's opinion of disabling limitations. Specifically, Plaintiff received no treatment for her alleged left shoulder injury for the *five-year* period between August 2007 and November 2012, the month she filed her claim. (AR 20.) The lack of a treatment history certainly does not support a medical opinion of disabling impairment. And, to the contrary, Plaintiff had full active range of motion bilaterally on examination and reduced, but functional grip strength measurements on testing. (AR 22 citing AR 500.) Plaintiff does not cite any evidence from the record that contradicts the ALJ's findings or supports Dr. Balourdas's opinion.

Moreover, the ALJ did not assign controlling weight to Dr. Balourdas's opinion because his medical opinion appeared to be based on Plaintiff's subjective complaints that were not supported by the objective evidence in the record. (AR 21.) Dr. Balourdas had issued a permanent and stationary report with significant limitations to use of Plaintiff's left hand. (*Id.*) The ALJ found these significant limitations were the product of Plaintiff's subjective complaints and are not corroborated by both the objective findings in the record and the findings on physical examination. (*Id.*) For example, Plaintiff had full active range of motion bilaterally when physically examined by Dr. Sabourin. (Ex. 7F/2.) However, Dr. Balourdas imposed limitations for Plaintiff as though she did not have full active range of motion. This supports the ALJ's finding that Dr. Balourdas's opinion was inconsistent with the record and based on Plaintiff's unsupported subjective complaints.

Plaintiff fails to meet her burden for this Court to overturn the ALJ's assignment of weight to Dr. Balourdas's opinion. The ALJ did not err here because the evidence shows that Dr. Balourdas's opinion is not supported by the clinical and diagnostic findings in the

medical record during the relevant period. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (explaining that an ALJ can reasonably discount a treating physician's opinion that is inadequately supported by clinical findings) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Moreover, the appropriate standard for assessing the ALJ's assignment of weight to Dr. Balourdas is the less strenuous "specific and legitimate" standard. *See Ford v. Saul*, 950 F3.d 1151, 1154 (9th Cir. 2020). In *Ford,* the ALJ was able to reject the treating physician's opinion regarding the plaintiff's residual functional capacity by giving specific and legitimate reasons for doing so. (*Id.* at 1154.) Here, the ALJ met the requisite standard by providing specific and legitimate reasons for doing so, such as a lack of consistency with the evidence in the record and the fact that Dr. Balourdas's opinions were based on Plaintiff's subjective complaints. Therefore, the ALJ did not err. The ALJ's assignment of weight to Dr. Balourdas's opinion should be affirmed.

### A. Plaintiff is Not Entitled to Summary Judgment

Based on the foregoing recommendation that Defendant's Cross-MSJ be GRANTED, this Court necessarily recommends that Plaintiff's MSJ be DENIED.

### V. CONCLUSION

This Court RECOMMENDS that Plaintiff's MSJ be DENIED and that Defendant's Cross-MSJ be GRANTED.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

IT IS ORDERED that **no later than May 20, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties **no later than June 3, 2021**. The parties are advised that

failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: April 30, 2021

_____
Hon. William V. Gallo
United States Magistrate Judge