1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  VIVIAN OMILIA CATHEY,               Case No.:  3:19-CV-275-GPC-WVG

12                         Plaintiff,   **ORDER DECLINING TO ADOPT**
                                        **MAGISTRATE JUDGE'S REPORT**
13  v.                                  **AND RECOMMENDATIONAND**
                                        **GRANTING PLAINTIFF'S MOTION**
14  ANDREW SAUL, Commissioner of        **FOR SUMMARY JUDGMENT AND**
    Social Security,                    **DENYING DEFENDANT'S CROSS-**
15                                      **MOTION FOR SUMMARY**
                           Defendant.   **JUDGMENT**
16
17
18                                      **[Dkt. Nos. 18, 20.]**
19

20       On February 6, 2019, Plaintiff Vivian Omilia Cathey ("Plaintiff") filed this action

21  seeking judicial review of the Commissioner of Social Security's final decision denying

22  Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social

23  Security Act ("Act").  (Dkt. No. 1, Compl.)

24       Plaintiff filed a motion for summary judgment.  (Dkt. No. 18.)  Defendant then

25  filed a cross motion for summary judgment and opposition to Plaintiff's motion for

26
27                                      1
28

summary judgement.  (Dkt. No. 20.)  Plaintiff filed a reply to Defendant's opposition.[1]
(Dkt. No. 21.)  On April 30, 2021, Magistrate Judge William V. Gallo issued a report and
recommendation ("Report") recommending that the Court grant Defendant's motion for
summary judgment and deny Plaintiff's motion for summary judgment.  (Dkt. No. 24.)
Plaintiff filed objections to the Report on May 20, 2021, (Dkt. No. 25), and Defendant
filed a reply to Plaintiff's objections, (Dkt. No. 26).  Having reviewed the parties'
arguments, the record, and the applicable law, the Court DECLINES TO ADOPT the
Magistrate Judge's Report and GRANTS Plaintiff's motion for summary judgment,
DENIES Defendant's motion for summary judgment, and REMANDS for further
proceedings.

## LEGAL STANDARD

### I.    Standard of Review of Magistrate Judge's Report and Recommendation.

The district court's duties in connection with a Report from a magistrate judge are
set forth in Federal Rules of Civil Procedure 72(b) and 28 U.S.C. § 636(b).  The district
court "may accept, reject or modify, in whole or in part, the findings and
recommendations made by the magistrate."  28 U.S.C. § 636(b).  The district court need
not review *de novo* those portions of a Report to which neither party objects.  *See Wang
v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328
F.3d 1114, 1121–22 (9th Cir. 2003) (*en banc*).  When no objections to a Report are made,
the Court may assume the correctness of the magistrate judge's findings of fact and
decide the motion on the applicable law.  *Campbell v. U.S. Dist. Ct. for the N. Dist. Of
California*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215,
1217 (S.D. Cal. 2001).  Here, because Plaintiff filed an objection to the Magistrate

---

[1] The Court will construe Plaintiff's reply to Defendant's opposition to Plaintiff's motion for summary
judgment as Plaintiff's opposition to Defendant's motion for summary judgment.

Judge's Report, the Court will make a *de novo* determination of those portions of the report to which objections were made.

## II.   Standard of Review of Commissioner's Final Decision

Section 205(g) of the Act permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. § 405(g).  The reviewing court may enter a judgment affirming, modifying, or reversing the Commissioner's decision, and may also remand the matter to the Commissioner of Social Security for further proceedings.  *Id.*

The scope of the reviewing court is limited; it may only "set aside the ALJ's[2] denial of benefits . . . when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (internal quotations omitted).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  However, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## III.   Determination of Disability

For the purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant meets this definition, the ALJ employs a five-step sequential evaluation.  20 C.F.R. § 404.1520(a).  If the ALJ

---

[2] Administrative Law Judge

determines that a claimant is either disabled or not disabled at a step in the process, the ALJ does not continue on to the next step.  *See* 20 C.F.R. § 404.1520(a); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).  In brief, the ALJ considers whether the claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe, medically determinable physical or mental impairment . . . or a combination of impairments that is severe" and that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work."  20 C.F.R. § 404.1520(a)(4)(i)-(v).  Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC.  *See* 20 C.F.R. § 404.1520(e); *Bray*, 554 F.3d at 1222–23; *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  The burden of proof is on the claimant at steps one through four but shifts to the Commissioner at step five.  *Bray*, 554 F.3d at 1222.

## BACKGROUND

### I.    Procedural History

On September 22, 2012[3], Plaintiff filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act.  (Dkt. No. 11-5, Administrative Record ("AR") 241–42.)  Plaintiff alleges she became unable to work due to her disability on July 1, 2008.  (*Id.*)  Plaintiff's application was denied initially and upon reconsideration.  (Dkt. No. 11-4, AR 108–11, 114–18.)  Plaintiff filed a request for a hearing on May 6, 2013 before an ALJ.  (*Id.*, AR 120–21, 140.)  On February 14, 2014,

---

[3] Plaintiff, the first ALJ, and the Magistrate Judge state that Plaintiff filed her application for DIB on September 21, 2012.  (Dkt. No. 1 at 2; Dkt. No. 11-3, AR 83; Dkt. No. 24 at 5.)  However, her DIB application indicates that it was filed on September 22, 2012.  (Dkt. No. 11-5, AR 241–42.)

the ALJ ("first ALJ") issued an unfavorable decision finding that Plaintiff was not disabled under the Act through December 31, 2012, the date last insured.  (Dkt. No. 11-3, AR 83–93.)  Plaintiff then requested the Appeals Council review the ALJ's decision. (Dkt. No. 11-4, AR 170.)  The Appeals Council vacated the decision and remanded the case to the ALJ.  (Dkt. No. 11-3, AR 98–102.)  A second hearing before a different ALJ ("second ALJ") was held on August 29, 2017.  (Dkt. No. 11-4, AR 210).  On February 26, 2018, the second ALJ issued an unfavorable decision finding that Plaintiff was not disabled through her date last insured, December 31, 2012.  (Dkt. No. 11-2, AR 15–22.) Plaintiff's second request for review was denied by the Appeals Council, making the second ALJ decision's final.  (*Id.*, AR 1–5.)  Plaintiff then filed this action pursuant to 42 U.S.C. § 405(g).

## II.  Medical History

### A.  Treating Physicians' Medical Records

The earliest medical records in the Administrative Record date back to September 13, 2000, when Plaintiff was diagnosed with bilateral wrist tendonitis and early ganglion cysts.  (Dkt. No. 11-7, AR 437–38.)  Plaintiff was examined by Dr. Nusrt Rajput, M.D., approximately every two weeks until November 20, 2000.  (*Id.*, AR 425–36.)  Dr. Rajput prescribed Naproxen and physical therapy, and instructed modified work, specifically restricting the use of tweezers and air tools with Plaintiff's left hand.  (*Id.*)  On November 21, 2000, Dr. Rajput referred Plaintiff to Dr. Greg Balourdas, M.D., a hand specialist, for evaluation and treatment.  (*Id.*, AR 423.)

Dr. Balourdas initially examined Plaintiff on November 29, 2000.  (*Id.,* AR 416–19.)  Upon physical examination, he observed a "suggestion of fullness over the left dorsal wrist, without a distinct ganglion," and "slight tenderness over the extensor forearm and the trapezial musculature, with full forearm, elbow, and shoulder range of motion."  (*Id.*, AR 418.)  Dr. Balourdas assessed that the symptoms of Plaintiff's right

extremity had been resolved, and observed "residual evidence of a possible tendinitis, ganglion cyst and associate ligament laxity at the scapholunate interval." (*Id.*)  He noted that her symptoms appear to be improving.  (*Id.*)  He prescribed an MRI scan to rule out a ligament injury or the presence of a ganglion.  (*Id.*, AR 419.)  He instructed Plaintiff to continue her medication and use a splint and to be on modified duty.  (*Id.*, AR 416, 419.)  On January 16, 2001, the MRI scan of the left wrist revealed that Plaintiff had a "trace amount of fluid within the dorsal aspect of the radiocarpal joint space" but no ganglion cyst or ligament injury was found.  (*Id.*, AR 420.)

On February 1, 2001, Dr. Balourdas reexamined Plaintiff and noted she had returned to full duty.  (*Id.*, AR 415.)  He observed that Plaintiff was "feeling better" with "less pain", "less tingling in tips" but still "painful with weight bearing through extended wrist." (*Id.*)  Six weeks after returning to full duty, on March 19, 2001, Dr. Balourdas noted "minimal residual dorsal wrist swelling, without a distinct ganglion" with full range of motion of the left hand, wrist and forearm with some "discomfort over the dorsal wrist at the end of full extension.  (*Id.,* AR 412.)  She discontinued taking Naprosyn about two weeks ago and had no increase in symptoms since discontinuing her medication.  (*Id.*)  He noted that it is reasonable that she might require over the counter anti-inflammatories for any mild symptoms that may flare up.  (*Id*., AR 413.)  Dr. Balourdas concluded that Plaintiff "has no work preclusions and is capable of performing her usual work and of competing in the open labor market without limitations." (*Id.*)

Approximately five years later, on July 24, 2006, because Plaintiff's left wrist symptoms worsened, she was seen again by Dr. Balourdas.  (*Id.*, AR 530–36.)  She complained of "numbness over the dorsum of the hand and radiating proximally to the trapezial musculature" describing the pain as "burning." (*Id.*, AR 531.)  She stated she drops objects and her symptoms increase at night.  (*Id.*)  She had also stopped working two weeks prior.  (*Id.*)  Upon physical examination, Dr. Balourdas found remarkable

swelling over the dorsal left wrist, and "tenderness to palpation at the site of the cyst as well as over the extensor forearm and into the lateral elbow."  (*Id.*, AR 532.)  She had full range of motion of the shoulder, elbow, forearm, and wrist.  (*Id.*)  He assessed that Plaintiff suffers from "local symptoms probably related to a dorsal wrist ganglion."  (*Id.*)  He concluded that he would "first focus on the dorsal wrist ganglion" and request electrodiagnostic studies due to Plaintiff's subjective complaints which sounded more neurogenic in origin.  (*Id.*, AR 533.)  Dr. Balourdas also opined that it was unlikely for Plaintiff to "experience significant permanent impairment at the conclusion of treatment." (*Id.*)  Dr. Balourdas saw her again on August 2, 2006, and September 14, 2006 with no change in her condition.  (*Id.,* AR 527, 529.)

On September 19, 2006, Dr. Balourdas performed an excision of Plaintiff's left dorsal wrist ganglion.  (*Id.*, AR 525–26.)  Following the operation, from September 21, 2006 to December 18, 2006, Plaintiff was routinely seen by Dr. Balourdas.  (*Id.*, AR 485–498, 519–524). According to Dr. Balourdas' observation, initially, Plaintiff was improving as expected, (*id.*, AR 523, 524, 521), but then assessed that she improved slower than expected.  (*Id.*, AR 519, 520, 522.)  One month post-op, on October 19, 2006, it was noted that Plaintiff did not attend physical therapy due to lack of communication and was discouraged because of the persistent mass and discomfort.  (*Id.*, AR 522.)  At that time, Dr. Balourdas' objective findings noted thickened scar at the surgical site, tender to palpation, no appreciable fluctuance, no ganglion recurrence, and satisfactory grip strength at this point.  (*Id.*)  On November 9, 2006, Plaintiff reported she was doing well with therapy, had not yet returned to modified work, and still had some thickness and discomfort at the surgical site.  (*Id.*, AR 521.)  Dr. Balourdas noted scar softening and near full range of motion and no discomfort with grip effort.  (*Id.*)  On November 27, 2006, Plaintiff continued improving despite denial of authorization for further therapy.  (*Id.*, AR 520.) She was also taking Daypro to relieve her symptoms.

1   (*Id.*)  She had discomfort with wrist extensions and occasional numbness in her fingers

2   and soreness in the trapezial left muscle.  (*Id.*)  On December 18, 2006, Plaintiff reported

3   doing better, taking Daypro and was able to tolerate more activities without discomfort.

4   (*Id.*, AR 519.)  At this time, she was anxious to return to work.  (*Id.*)  Dr. Balourdas noted

5   that the surgical site was still tender, the scar more supple and range of motion was still

6   limited in flexion.  (*Id.*)

7       From January 2007 to May 2007, Dr. Balourdas continued to examine Plaintiff and

8   noted her condition worsened with a full return to work and began using anti-

9   inflammatory and muscle relaxants.  (*Id.*, AR 515-18.)  On June 14, 2007, Plaintiff

10  continued to experience left upper extremity pain and discomfort with constant pinch and

11  fine manipulation and her level of discomfort was intolerable on busy days.  (*Id.*, AR

12  514.)  Dr. Balourdas noted that physical therapy offered some relief and Plaintiff was

13  again placed on modified duty.  (*Id.,* AR 514.)  In July 2007, Dr. Balourdas noted that her

14  condition had worsened noting "[p]uzzling activity intolerance" and possible recurrent

15  ganglion but key concerns were myofascial dysfunction proximally.  (*Id.,* AR 513.)  He

16  imposed more restrictions on work activity.  (*Id.*)  At the next visit on August 9, 2007,

17  Plaintiff had been off work due to unavailability of restricted work and she continued to

18  have fullness over the left trapezial muscle and severe pain in left shoulder/trapezial

19  muscle.  (*Id.*, AR 512.)  Therefore, Dr. Balourdas assessed that further workup was

20  warranted with a cervical spine and shoulder x-ray and an MRI scan and a general

21  orthopedic consultation.  (*Id.*)  On August 16, 2007, x-rays revealed a cervical rib which

22  may explain her left upper extremity symptoms.  (*Id.*, AR 511.)  The MRI was normal but

23  Dr. Balourdas requested neurologic evaluation due to her cervical rib findings.  (*Id.,* AR

24  510.)

25       On October 16, 2007, Richard Ostrup, MD, examined Plaintiff for a neurosurgical

26  evaluation.  (*Id.*, AR 481–84.)  Dr. Ostrup noted that Plaintiff has a prominent cervical rib

27

28

3:19-CV-275-GPC-WVG

on her left, and that "this certainly could be accounting for a component of her problems." (*Id.*, AR 483.)  He opined that Plaintiff should be offered surgical intervention.  (*Id.*)  However, Plaintiff was anxious, and declined surgery.  (*Id.,* AR 559.)

On November 1, 2007, Dr. Balourdas examined Plaintiff after she was seen by Dr. Richard Ostrup.  (*Id.,* AR 509.)  Plaintiff expressed anxiety about any surgery as Dr. Ostrup suggested possible benefits from a surgery but was not overly optimistic.  (*Id.*)  On the same day, Dr. Balourdas wrote a Comprehensive Hand and Upper Extremity Evaluation, Permanent and Stationary Report that Plaintiff "suffers impairment in strength . . . related to discomfort involving the left upper extremity with both recurrent ganglion cyst and probable thoracic outlet syndrome diagnoses." (*Id.*, AR 506.)  He assessed Plaintiff's condition to be "permanent and stationary" and her modified duty should now be permanent.  (*Id*., AR 505-06.)  He indicated that Plaintiff "should avoid tasks which require fine manipulation and dexterity or constant pinch limited to no more than 15 minutes every two hours with the left hand.  She should limit repetitive lifting, gripping or pinching with the left hand to no more than 15 minutes out of every hour.  On the left she should avoid repetitively gripping or lifting anything greater than 5 pounds." (*Id.*, AR 506.)

On January 10, 2008, Dr. Balourdas examined Plaintiff for the final time and provided a Final Report Addendum.  (*Id.,* AR 500.)  He found that "no ratable impairments result[ed]" when utilizing the AMA Guide sections.  (*Id.*)  However, he opined that "while the [AMA] Guides do not provide weight for grip strength as a source of impairment, clearly [Plaintiff] suffers impairment and has functional deficit."  (*Id.*)

Between July 2007 and October 2012, Plaintiff was treated at Kaiser Permanente for abnormal glucose, chronic rhinitis, constipation, diffuse cystic mastopathy, irritable bowel syndrome, myalgia and myositis, uterine leiomyoma, myofascial pain syndrome and a variety of different ailments.  (Dkt. No. 11-8, AR 566; AR 610.)

From October 7, 2009 through September 9, 2010, Plaintiff was seen by Mary Grehian Yoo, MD, an internist, for shoulder and neck pain and diagnosed with cervical radiculopathy. (*Id.*, AR 600-03; 667-70.) At the initial visit on October 7, 2009, Dr. Grehian referred Plaintiff to radiology for MRIs of the neck and lower back, physical therapy for neck and back, neurology for arm numbness and physical medicine for possible injection of back. (*Id.*, AR 662.) In September 2010, Plaintiff was prescribed Nortriptyline as it helped with the myofascial pain syndrome and she was also referred to acupuncture. (*Id.*, AR 601, 603.) From October 16, 2009 through January 15, 2010, Plaintiff engaged in physical therapy for shoulder pain. (*Id.,* AR 609, 636-38, 648, 640-42; 646-50; 657-61.) An MRI of lumbar spine and cervical spine was conducted on October 29, 2009. (*Id.*, AR 650-51.) Plaintiff was also seen by a neurologist, Linda Jeannette Jaffe, M.D. on November 3, 2009. (*Id.*, AR 652.)

From October 26, 2009, to January 15, 2010, Plaintiff was also seen for her chronic neck and left upper extremity pain by Dr. Yvonne Marie Aube, M.D., a Physiatrist. (*Id.,* AR 639-40; AR 643-45; 653-57.) Dr. Aube diagnosed Plaintiff with myofascial pain syndrome, rotator cuff syndrome or left shoulder impingement, cervical spondylosis. (*Id.,* AR 639.) She was treated with "trigger point injection the left upper trapezius and left subacromial injection." (*Id.*, AR 639.) These injections helped her pain symptoms. (*Id.*, AR 639-40; 645.) Dr. Aube noted that if the symptoms increase, she anticipated an MRI of the left shoulder and an orthopedic consult. (*Id.*, AR 640.)

## B.   Examining State Agency Consultants

On November 17, 2008, an orthopedic consultation was performed on Plaintiff by Thomas J. Sabourin, MD, the consultative examiner. (Dkt. No. 11-7, AR 559–63.) In the examination, Dr. Sabourin found that Plaintiff had full range of motion of both shoulders but has pain over the trapezius muscle with shoulder range of motion. (*Id.*, AR 561.) However, there was no tenderness over the shoulder or the scapula and provocative

test was negative. (*Id.*) Plaintiff has full range of motion of her elbows, no instability in her wrists and normal range of motion of her hands and fingers. (*Id.*) Dr. Sabourin concluded that Plaintiff "could only lift or carry 50 pounds occasionally and 25 pounds frequently," "could stand and walk six hours of an eight-hour workday and sit for six hours of an eight-hour workday," "has no posture limitations," "has manipulative limitations," and that she could "work with the left arm above the shoulder level only occasionally." (*Id.*, AR 563.) He also noted that "the left wrist ganglion excision is inconsequential" and that he feels she has "no gross or fine manipulation, as she has no need for assistive devices." (*Id.*)

On November 19, 2012, Dr. Sabourin performed a second orthopedic consultation on Plaintiff. (Dkt. No. 11-8, AR 767–71.) Plaintiff "complain[ed] of a throbbing pain with any sitting or standing in the neck and left trapezius muscle" and used a "left wrist brace for driving and at night" due to pain in her left arm. (*Id.*, AR 767.) Examination revealed that Plaintiff had normal range of motion of the shoulders, elbows, wrists, hands, and fingers. (*Id.*, AR 769.) He noted that while she had full range of motion on the left shoulder, it was not as complete as on the right in abduction. (*Id.*) Dr. Sabourin concluded that Plaintiff "has non-anatomical numbness in the left arm, but otherwise her findings are relatively normal" and that although the "range of motion for her left shoulder is slightly less than that of the right, [it] is slightly better than . . . normal for Social Security purposes." (*Id.*, AR 771.) In addition, he noted she has pain syndrome likely related to the excision of a tumor on that side. (*Id.*) Based on the evaluation, he came to the same conclusion on and assessed that Plaintiff "could lift or carry 50 pounds occasionally and 25 pounds frequently," "could stand and walk six hours of an eight-hour workday and sit for six hours of an eight-hour workday," "has no postural limitation," "has manipulative limitations," and that she could "work with the left arm above the shoulder level only occasionally." (*Id.*)

### C.      Non-Examining State Agency Consultants

On December 13, 2012, R. Masters, M.D. reviewed Plaintiff's DIB claim.  (Dkt. No. 11-3, AR 54–66.)  Dr. Masters found Plaintiff was not disabled and that "[m]edium RFC with [left upper extremity] limits" to be appropriate.  (*Id.*, AR 61, 65.)  He found Plaintiff to be capable of lifting/carrying 50 pounds occasionally and 25 pounds frequently, stand/walk or sit for six hours in an eight-hour workday, and have manipulative limitations when reaching overhead with her left upper extremity but no limitations as to gross and fine manipulations.  (*Id.*, AR 63–64.)  He concluded that while Plaintiff's condition "results in some limitations in [her] ability to perform work related activities," the limitations do not prevent her from past work in electronics quality assurance.  (*Id.*, AR 65.)  Further, he noted that her condition was not severe enough to keep her from working.  (*Id.*, AR 65–66.)

On April 12, 2013, V. Michelotti, M.D. reviewed Plaintiff's DIB claim.  (*Id.*, AR 67–79.)  Dr. Michelotti found that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk and sit for about six hours in an eight-hour workday, and had postural limitations due to chronic left shoulder and wrist pain.  (*Id.*, AR 76.)  She also had limited limitations of reaching overhead with her left upper extremity which she could do occasionally.  (*Id.*, AR 77.)  He concluded that Plaintiff was not disabled and had the RFC to perform her previous work in electronic quality assurance.  (*Id.*, AR 78.)

## III.   First ALJ Decision

ALJ Mason D. Harrell, Jr. applied the five-step sequential framework to determine that Plaintiff was not disabled.  (Dkt. No. 11-3, AR 83–93.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of July 1, 2008, through her date last insured of December 31, 2012.  (*Id.*, AR 85.)  At step two, the ALJ found that Plaintiff had the following severe impairments: cervical spondylosis, status post excision of tumor on the left side of her

neck, chronic left trapezial muscle pain, and ganglion cyst of the left wrist, status post excision of ganglion cyst.[4]  (*Id.*)  At step three, the ALJ found that the evidence did not support a finding that the severity of Plaintiff's impairments met or equaled the severity of the listings of the regulation.  (*Id.*, AR 85–86.)

Prior to step four, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 CFR § 404.1567(c).  (*Id.*, AR 86.) Specifically, the ALJ determined Plaintiff had the ability to lift or carry 50 pounds occasionally and 25 pounds frequently but was unable to perform work above shoulder level with the left arm and could only lift 2 pounds with the left hand; to be limited to using her left hand on an occasional basis, performing fine manipulation, dexterity and constant pinch with her left extremity no more than ten minutes every two hours, and occasionally engage in repetitive lifting, gripping, or pinching with the left hand; and to sit and stand for six hours out of an eight-hour workday with regular breaks.  (*Id.*)

At step four, the ALJ found that Plaintiff was not capable of performing past relevant work.  (*Id.*, AR 91–93.)  However, she could perform the requirements of a cashier, ticket taker, and bus monitor.  (*Id.*)  Thus, the ALJ concluded that Plaintiff was not disabled at any time from the alleged onset date, July 1, 2008, through the date last insured, December 31, 2012.  (*Id.*, AR 93.)

## IV.    Appeals Council Review

Upon review on September 18, 2015, the Appeals Council remanded the case due to the inconsistencies in the vocational expert testimony regarding the jobs cited on step four and the Plaintiff's limitations as identified in the RFC finding.  (*Id.*, AR 100–03.)

---

[4] Plaintiff alleges disability to her left shoulder and wrist.  (Dkt. No. 11-3, AR 55.)  However, records occasionally indicate that Plaintiff to be right-handed.  (Dkt. No. 11-7, AR 461, 481, 517, 520, 522, 560.)  The Court notes that Plaintiff is sufficiently ambidextrous enough to use her right hand "well enough to write and use eating utensils."  (Dkt. No. 11-7, AR 434; Dkt. No. 11-2, AR 21.)

The Appeals Council found that the jobs identified by the vocational expert did not appear to have taken into consideration all the Plaintiff's limitations as identified in the RFC finding.  (*Id.*, AR 100.)  The Appeals Council instructed the ALJ, upon remand, to update the record with additional evidence concerning the claimant's impairments and obtain supplemental evidence from a vocational expert to clarify the effect of the Plaintiff's limitations on her occupational base.  (*Id.*, AR 101.)  Specifically, the ALJ was instructed to "ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy" and to "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and . . . the Selected Characteristics of Occupations."  (*Id.*)

## V.  Second ALJ Decision

On August 29, 2017, ALJ Eric V. Benham held a hearing and also inquired whether Plaintiff had additional evidence.  (Dkt. No. 11-2, AR 32.)  Plaintiff submitted post-hearing evidence that was admitted into the record.  (*Id.*, AR 16; Dkt. No. 11-9.)

In his decision, the ALJ applied the five-step sequential framework to determine that Plaintiff was not disabled.  (Dkt. No. 11-2, AR 18-22.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured.  (*Id.*, AR 18.)  At step two, the ALJ found that Plaintiff had the following severe impairments: left shoulder disorder with pain and left wrist disorder with pain.  (*Id.*)  At step three, the ALJ found that the record did not establish medical signs, symptoms, or degree of functional limitation required to "meet or equal" one of the listings of the regulation.  (*Id.*)

Prior to step four, the ALJ determined that Plaintiff had the RFC to perform medium work as defined in 20 CFR § 404.1567(c), to lift or carry 50 pounds occasionally and 25 pounds frequently, sit and stand/walk for six hours in an eight-hour workday, and

occasionally engage in overhead work with the left upper extremity.  (*Id.*)  In making this finding, the ALJ gave greater weight to the opinions of the consultive examiner and State agency doctors than to Plaintiff's treating physician.  (*Id.*, AR 21.)

At step four, the ALJ found that Plaintiff could perform past relevant work as an inspector of electronics.  (*Id.*, AR 22.)  Thus, the ALJ concluded that Plaintiff was not under a disability at any time from the alleged onset date through the date last insured. (*Id.*)

## DISCUSSION

### I.    Review Following Remand by the Appeals Council

Plaintiff argues that the law of case doctrine and rule of mandate both apply to Social Security hearings under the authority of *Stacy v. Colvin*, 825 F.3d 563 (9th Cir. 2016) and contends that the second ALJ decision failed to comply with the Appeal Council's remand order.  (Dkt. No. 18-1 at 4–5.)  Defendant responds that the second ALJ was permitted to take additional actions that were not inconsistent with the Appeals Council's remand order and that the law of case doctrine and rule of mandate are inapplicable to this case.  (Dkt. No. 20 at 6.)

In the Report, the Magistrate Judge concluded that the law of case doctrine and the rule of mandate are inapplicable to the present matter, and that the ALJ acted in accordance with the Appeals Council's remand order.  (Dkt. No. 24 at 8–10.)  Plaintiff objects to the Magistrate Judge's Report asserting that the law of the case doctrine and rule of mandate should apply to the present matter, and that regardless of the application, the ALJ failed to address the inconsistency of the original decision and the instructions of the Appeals Council.  (Dkt. No. 25-1 at 2.)  Defendant replies that the doctrines are inapplicable to the case, and even if applicable, the second ALJ acted within the scope of the Appeals Council's order.  (Dkt. No. 26 at 2–3.)

1    The Court concludes that *Stacy v. Colvin* does not support application of the law of

2    the case doctrine and the rule of mandate to remands from the Appeals Council in the

3    same way they would apply to a remand by a district court.  Instead, the Court finds that

4    ALJs are governed by 20 C.F.R. § 404.977 in their reconsideration of a case on remand

5    from the Appeals Council.

6    **A.     Law of the Case Doctrine and Rule of Mandate**

7          "The doctrine [of the law of the case] is a judicial invention designed to aid in the

8    efficient operation of court affairs and is founded upon the sound public policy that

9    litigation must come to an end."  *United States v. Smith*, 389 F.3d 944, 948 (9th Cir.

10   2004) (citations and internal quotation marks omitted).  "The law of the case doctrine

11   generally prohibits a court from considering an issue that has already been decided by

12   that same court or a higher court in the same case."  *Hall v. City of Los Angeles*, 697 F.3d

13   1059, 1067 (9th Cir. 2012).  The rule of mandate provides that "any district court that has

14   received the mandate of an appellate court cannot vary or examine that mandate for any

15   purpose other than executing it."  *Id.*

16         The law of case doctrine and the rule of mandate are federal court rules and apply

17   in the context of social security cases when there is a federal court remand.  In *Stacy v.*

18   *Colvin*, 825 F.3d 563 (9th Cir. 2016), the Ninth Circuit in a case of first impression held

19   that the law of the case doctrine and the rule of mandate apply to social security

20   administrative remands from a federal court in the same way they would apply to any

21   other case.  However, *Stacy* did not involve a review by a district court of an ALJ's

22   compliance with a remand by an Appeals Council and does not provide any authority to

23   extend it in the manner sought by Plaintiff.

24         Here, after an unfavorable decision by the first ALJ, Plaintiff sought review with

25   the Appeals Council which vacated the first ALJ's decision and remanded the case to a

26   second ALJ.  (Dkt. No. 11-3, AR 83–93; Dkt. No. 11-4, AR 170; Dkt. No. 11-3, AR 98–

27

28

102).  There was no federal court remand order in this case.  As such, Plaintiff's reliance on *Stacy v. Colvin* is misplaced as it involved a federal remand order to an administrative agency, 825 F.3d at 566.  As the Report notes, Plaintiff fails to demonstrate how the federal doctrines apply to proceedings confined within an administrative agency.  (Dkt. No. 24 at 9.)  The Court agrees that the law of the case doctrine and rule of mandate are inapplicable to this case.  *See Tyler v. Barnhart*, No. C 06-3056 CW, 2007 WL 973527, at *8 (N.D. Cal. Apr. 27, 2007) (law of the case doctrine does not apply because the case "does not involve a remand order from the district court, but rather a remand order from the Appeals Council itself" and the remand order instructed "ALJ to make specific findings, provide germane reasons, and obtain supplemental evidence as necessary.")

### B.     20 C.F.R. § 404.977

Although the law of the case doctrine has no application here, the Social Security Regulations, 20 C.F.R. § 404.977(b), provides the instructions for an ALJ following remand by the Appeals Council:

> (b) Action by administrative law judge on remand. The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.

20 C.F.R. § 404.977(b).  The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates.  *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954).  An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process.  *NLRB v. Welcome–American Fertilizer Co.*, 443 F.2d 19, 20 (9th Cir.1971).  Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed."  *Vitarelli*, 359 U.S. at 547

1   (Frankfurter, J., concurring).  Nonetheless, under the Social Security Act, circuit courts

2   differ and even district courts within a circuit are divided on whether they may rule on

3   whether an ALJ complied with an Appeals Council's remand order.  *See Inteso v.*

4   *Comm'r of Soc. Sec.*, Case No. 1:16–cv–1893, 2017 WL 9485668, at *9-10 (N.D. Ohio

5   Oct. 4, 2017) (explaining different opinions of federal courts' review of an ALJ's failure

6   to comply with an Appeals Council's remand order); *Huddleston v. Astrue*, 826 F. Supp.

7   2d 942, 954 (S.D.W. Va. 2011) (citing different courts' approaches).

8        In an unpublished decision, *Tyler v. Astrue*, 305 Fed. App'x 331, 332 (9th Cir.

9   2008), the Ninth Circuit ruled "[t]he district court properly declined to evaluate whether

10  the ALJ's second decision satisfied the demands of the Appeals Council's remand . . . .

11  [F]ederal courts only have jurisdiction to review the final decisions of administrative

12  agencies. When the Appeals Council denied review of the ALJ's second decision, it made

13  that decision final, and declined to find that the ALJ had not complied with its remand

14  instructions."  *Id.*  District courts in the Ninth Circuit have followed *Tyler*.  *See Caravia-*

15  *Moroianu v. Berryhill*, No. CV 16-01848-RAO, 2018 WL 1187502, at *1 (C.D. Cal. Mar.

16  6, 2018) (while court would have jurisdiction to review the ALJ's second unfavorable

17  decision to determine if it is supported by substantial evidence, it lacks jurisdiction to

18  review the intra-agency decision regarding whether the ALJ complied with the Appeals

19  Council's order); *Thompson v. Astrue*, No. EDCV, 09–1182 AGR, 2010 WL 2991488, at

20  *2 (C.D. Cal. July 27, 2010) ("the Court's role is to determine whether the ALJ's final

21  decision is supported by substantial evidence, not whether the ALJ complied with the

22  Appeals Council's remand order.").

23       The *Tyler* decision did not address the effect of *Vitarelli* or whether § 404.977 was

24  intended to protect an interest of a party before the agency rather than to govern internal

25  agency procedures.  Whereas in *Pearl v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 762, 767-

26  68 (E.D. Mich. 2019), the district court ruled it had jurisdiction to address the question

27

28

3:19-CV-275-GPC-WVG

whether an ALJ complied with a remand order issued by the Appeals Council when the Court adjudicates a civil action filed after a final decision by the Commissioner.  The *Pearl* court found that § 404.977 "affords procedural protection to a claimant, much the same as other administrative regulations that routinely are reviewed after a final decision is issued by the Commissioner, such as the treating physician rule."  *Id*. at 767.  As such, the court found it had the authority to review an agency's compliance with its procedures and remand a case when the ALJ fails to follow the regulations, even when substantial evidence otherwise might support the conclusions.  *Id*.  The Tenth Circuit followed suit in *Noreja v. Comm'r, Soc. Sec. Admin*., 952 F.3d 1172, 1880 (10th Cir. 2020), where it held that it has subject matter jurisdiction to consider whether an ALJ complied with an Appeals Council's remand order.

Even if the Court concludes that it has jurisdiction to consider whether the second ALJ complied with the Appeals Council's remand order, the second ALJ did not ignore the scope of the remand order and conducted proceedings consistent with the Appeals Council's order.  The Appeals Council directed the ALJ to update the record with additional available evidence about Plaintiff's impairments for the period prior to the date last insured and give further consideration to the treating and nontreating source opinions and nonexamining source opinions and explain the weight given to these opinions as well as to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base for the relevant period prior to December 31, 2012.  (Dkt. No. 11-3, AR 101.)

Plaintiff does not challenge the second ALJ's decision on what the Appeals Council ordered concerning updating the record concerning her impairments or the vocational expert's opinion clarifying the effect of the assessed limitations concerning jobs in the national economy.  Instead, she argues the second ALJ improperly reassessed her RFC essentially concluding she can do more than the first ALJ determined.

3:19-CV-275-GPC-WVG

1    However, on an administrative remand,[5] an "ALJ is permitted to change his or her

2    findings after remand." *Saiz v. Saul,* Civil Action No. 19-cv-02826-PAB, 2021 WL

3    1172673, at *3 (D. Colo. Mar. 29, 2021) (citing *Miller v. Barnhart*, 175 F. App'x 952,

4    955-56 (10th Cir. 2006) ("Preclusion principle[s] . . . do not bind the ALJ to his earlier

5    decision.")).  An ALJ is not bound by his earlier decision because "[t]o hold otherwise

6    would discourage administrative law judges from reviewing the record on remand,

7    checking initial findings of fact, and making corrections, if appropriate.  We decline to

8    constrain the ALJ in a manner not mandated by the regulations." *Campbell v. Bowen*,

9    822 F.2d 1518, 1522 (10th Cir. 1987); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th

10   Cir. 2004) (stating that "[i]t was certainly within the ALJ's province, upon reexamining

11   [claimant's] record [after Appeals Council remand], to revise his RFC category");

12   *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989) ("Once the case was remanded

13   to the ALJ to gather more information about the extent of [claimant's] disability, the ALJ

14   was free to reevaluate the facts.").  In this case, the second ALJ reassessed Plaintiff's

15   RFC and concluded she can do more than the first ALJ assessed.  Under § 404.977(b),

16   this was not error.  *See id*.  Per the Appeal Council's order, the second ALJ allowed

17   Plaintiff to submit post-hearing evidence which she provided.  (Dkt. No. 11-2, AR 32-33;

18   Dkt. No. 11-9.)  However, the post-hearing evidence consists of Kaiser Permanente

19   records from 2014 to 2016 and address other maladies than those alleged in this case,

20   such as irritable bowel syndrome, constipation, and urinary urgency and do not support

21

22   _____

23   [5] The Court notes that the standard on the law of the case/rule of mandate is more stringent where the
     ALJ may not revisit issues already decided and may only address what the district court specifically

24   ordered on remand.  *See Allen v. Astrue*, No. CV 09–7239 JCG, 2010 WL 4825925, at *5-6 (C.D. Cal.
     Nov. 2, 2010) (prior ALJ RFC determination was the law of the case and could not be altered by

25   subsequent ALJ on remand); *Ischay*, 383 F. Supp. 2d at 1215 (ALJ's decision exceeded scope of the

26   court's remand order).

27                                         20

28

her claims of disability.  (*See id*.)  In addition, in compliance with the Appeal Council's order, the ALJ, at the hearing, had a vocational expert assess Plaintiff's limitations based on her occupational base.  (Dkt. No. 11-2, AR 22, 42-42.)  In her motion, Plaintiff has not challenged these actions.  Accordingly, the Court DENIES Plaintiff's motion for summary judgment on this issue.

## II.    **Weight of Medical Evidence**

Next, Plaintiff also argues that the ALJ should have given controlling weight to Plaintiff's treating physician, Dr. Balourdas.  (Dkt. No. 18-1 at 6.)  Defendant contends that proper weight was provided to Plaintiff's treating physician.  (Dkt. No. 21 at 3).  The Magistrate Judge concluded that the ALJ did not err by giving controlling weight to the consultative examiner and State agency doctor over the Plaintiff's treating physician. (Dkt. No. 24 at 10–12).  Plaintiff objects to the Report asserting that the second ALJ did not properly explain why little weight was given to Plaintiff's treating physician.   (Dkt. No. 25.)  Defendant replied that the second ALJ provided specific and legitimate reasons for discounting the treating physician's opinion.  (Dkt. No. 26.)

In social security disability cases, the ALJ must consider all medical opinion evidence.  *See* C.F.R. § 404.1527(b), (c).  Generally, the opinion of the treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *Garrison*, 759 F.3d at 1012.  An ALJ must "give more weight to medical opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of . . . [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  A treating physician's opinion is "given controlling weight so long as it is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the claimant's case record." *Trevizo v.*

*Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ may reject a treating or examining physician's uncontradicted medical

opinion by providing clear and convincing reasons. *Id.* (citation omitted).  If a treating

physician's opinion is contradicted, however, it may be rejected for "specific and

legitimate reasons that are supported by substantial evidence in the record." *Id.* (citation

omitted).  The ALJ can meet the requisite specific and legitimate standard "by setting out

a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th

Cir. 1998) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  While the

ALJ "need not discuss all evidence presented" to him, the ALJ must explain why

significant and probative evidence has been rejected. *Vincent on Behalf of Vincent v.*

*Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).  An ALJ errs by completely ignoring

medical evidence without providing specific and legitimate reasons for doing so. *Smolen*

*v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *Marsh v. Colvin*, 792 F.3d 1170, 1172–73

(9th Cir. 2015) ("Because a court must give 'specific and legitimate reasons' for rejecting

a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its

decision totally ignore a treating doctor and his or her notes, without even mentioning

them.").

Here, the Court finds that the second ALJ erred by ignoring and failing to consider

Plaintiff's treating physicians treating her chronic neck and left upper extremity pain at

Kaiser Permanente from October 2009 through September 2010, the time relevant to

determining Plaintiff's disability.  (Dkt. No. 11-8, AR 600-70.)  In fact, the second ALJ's

opinion that Plaintiff received no treatment for her alleged left shoulder injury from

August 2007 to November 2012, (Dkt. No. 11-2, AR 20), is belied by the Kaiser

Permanente records, (*see* Dkt. No. 11-8, AR 600-70).  The second ALJ also noted that that during this time, she was only taking ibuprofen three times a week, (Dkt. No. 11-2, AR 20); however, the records show that she took Nortriptyline, went to physical therapy and received "trigger point injections" and "left subacromial injections."  (Dkt. No. 11-8, 600-70.)

An ALJ cannot selectively rely on only certain portions of the record to support his conclusion and ignoring other relevant and material records that may support a contrary conclusion.  *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).  Because the second ALJ failed to consider the treating records of Kaiser Permanente, the second ALJ erred and his opinion rejecting the treating physician's opinion in favor of the consultative examiner's opinion is not supported by substantial evidence.[6]  Therefore, for other reasons, the Court GRANTS Plaintiff's motion for summary judgment.

## III.    Remand for Further Proceedings Is Appropriate

The Court has discretion and may remand the case "either for additional evidence and findings or to award benefits."  *Smolen*, 80 F.3d at 1292.  In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

This case does not involve the rare circumstance warranting an award of benefits. The second ALJ failed to consider relevant and material medical records from Plaintiff's treating physicians at Kaiser Permanente when he placed greater weight to the opinions

---

[6] The Court notes that the first ALJ considered the records from Kaiser Permanente.  (*See* Dkt. No. 11-3, AR 89.)

of the consultative examiner, Dr. Sabourin over the opinion of Plaintiff's treating physician, Dr. Balourdas.  Therefore, the full record was not considered by the ALJ, and further proceedings are necessary for a proper disability determination, and the Court REMANDS the case to the Commissioner of Social Security for further administrative proceedings.

## **CONCLUSION**

Based on the foregoing review of the relevant law and the administrative record, the Court **DECLINES TO ADOPT** the Report, **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's motion for summary judgment, and **REMANDS** the case to the Commissioner of Social Security for further administrative proceedings.

**IT IS SO ORDERED.**

Dated:  September 10, 2021

Hon. Gonzalo P. Curiel
United States District Judge

3:19-CV-275-GPC-WVG